# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| YILLIO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  2:25-cv-00533 |
| | ) | |
| v. | ) | |
| | ) | **JURY  TRIAL DEMAND** |
| UBER TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Yillio, Inc. ("Yillio" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Uber Technologies, Inc. ("Uber" or "Defendant") for infringement of United States Patent Nos. 8,285,696 ("the '696 Patent"), 8,650,176 ("the '176 Patent"), and 8,943,037 ("the '037 Patent") (collectively the "Patents-in-Suit").

## THE PARTIES

1.      Yillio is a corporation organized and existing under the laws of North Carolina and located at 6325 Falls of Neuse Rd., #35-242, Raleigh, North Carolina 27615.

2.      Upon information and belief, Defendant Uber is a company organized and existing under the laws of Delaware, with a principal place of business located at 1725 3rd Street, San Francisco, California 94158.  Defendant is registered to conduct business in Texas, and may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.      This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.      Uber is subject to the general and specific personal jurisdiction of this Court, based upon its regularly conducted business in the State of Texas and in the Eastern District of Texas ("District"), including conduct giving rise to this action.

6.      Uber has conducted and does conduct business within the State of Texas.

7.      Uber has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.      This Court has personal jurisdiction over Uber at least because Uber has made, used, offered to sell, sold, or put into service the accused products, systems, or services within the District, thus committing acts of infringement within the District, and placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Eastern District of Texas. Uber, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

9.      This Court likewise has personal jurisdiction over Uber at least because Uber has committed acts within this District giving rise to this action and has established minimum contacts

2

with this forum such that the exercise of jurisdiction over Uber would not offend traditional notions of fair play and substantial justice.

10.     This Court has specific personal jurisdiction over Uber in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to Uber's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1400(b).

12.     Uber is registered to do business in Texas, and upon information and belief, Uber has transacted business in this District and has committed acts of direct and indirect infringement in this District.

13.     Uber has a regular and established place of business in this District including at 3010 Gaylord Pkwy #200, Frisco, Texas 75034 through its subsidiary Uber Freight US LLC.  Uber Freight acquired Transplace in 2021 for over $2 billion and maintains Transplace's headquarters in Frisco, Texas.  Uber Freight currently advertises job postings in Frisco, Texas including for a Business Analyst and Sr. Program Manager I.

14.     Uber offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas and in this District.

## YILLIO'S INNOVATION IN SOCIAL CONTEXTUAL AD PLATFORMS

15.     Yillio specializes in the development of social GPS software that helps people discover, save and share favorite places and deals along their travel routes.

16.     At the core of Yillio's technology portfolio, including the Patents-in-Suit, is the capability to, via a mapping application, allow users to search along a travel route and find businesses that they might be interested in visiting along the route together with a platform that enables businesses to purchase advertising and provide coupons or specials to users along a specific route as well.  Such innovative technology has allowed for the targeting of advertisements to user' interests which leads to increased engagement and vendor profits.

17.     Yillio provides the Yillio App, based on the technology embodied by the Patents-in-Suit, that provides route-based point-of-interest searches, as well as the ability for businesses to create advertisements tied to the user experience along the route.



https://www.yillio.com/ (last accessed April 23, 2025).

## THE '696 PATENT

18.     Yillio is the owner by assignment from the inventors, Michael Wanyo and Vadim Droznin, of all right, title, and interest in and to United States Patent No. 8,285,696 ("the '696 Patent") titled "Apparatus and methods for providing route-based advertising and vendor-reported business information over a network," including the right to sue for all past, present, and future infringement. A true and correct copy of the '696 Patent is attached to this Complaint at Exhibit A.

19.     The '696 Patent issued from U.S. Patent Application Serial No. 11/761,202.

20.     The '696 Patent claims the benefit of U.S. Patent Application Serial No. 60/812,464, filed on June 9, 2006.

21.     The Patent Office issued the '696 Patent on October 9, 2012, after a full and fair examination.

22.     The '696 Patent is valid and enforceable.

23.     The '696 Patent relates to a method of providing information about vendors to a user based on information extracted from a database on the basis of geographic proximity to a travel route identified by the user.

24.     The inventors of the '696 Patent identified a problem in the prior art of methods for obtaining fuel prices by searching outdated databases based on a specific location such as zip code or street address.

25.     The '696 Patent provides several advantages over the prior art such as providing the ability to display business information depending on specified distances from a contemplated route.



*FIG. 4*

26.     The '696 Patent describes and claims a specific method that involves using a travel route supplied by a user and then accessing a database of self-reported business information, based upon the geography of the travel route, which then provides to the user certain advertisements specified by the business.  The method further provides for a vendor interface through which the self-reporting businesses can provide their geographic location, advertising budget, and other targeted advertising information.

27.     A person of ordinary skill in the art at the time of the invention would have recognized that methods claimed in the '696 Patent were, at the time of the invention, unconventional and describe a method of advertising by proximity to a travel route and based on

a database of information and parameters selected by the user that, at the time of the invention, was not routine.

28.     A person of ordinary skill in the art at the time of the invention would have understood that, at the time of the invention, there was no conventional manner in which to provide advertising to a user that was based on proximity to a travel route.  Instead, a person of ordinary skill in the art would recognize that, at the time of the invention, business information had been searchable by area only and not by proximity to a route.  Furthermore, a skilled artisan would recognize that, at the time of the invention, vendors were not able to advertise based on distance from a user's route.

29.     The '696 Patent provides technical solutions to these problems not solved in the prior art by querying a database, extracting information, receiving a route request, and displaying results based on various factors such as distance from the route and advertising budget.

30.     Claim 1 of the '696 Patent reads:

1. A method providing business information and advertising to a user, the method comprising:
(a) receiving from the user a query identifying a contemplated route;
(b) accessing a computer database of self-reported business information from vendors, each vendor having an identified geographic location, wherein the self-reported business information has been previously supplied by the vendors through a vendor interface and stored in the database; and
(c) providing to the user, via a server accessible over a network, information from the database concerning the business information of a set of vendors extracted from the database on the basis of geographic proximity to the route identified by the user and wherein the vendor interface is configured so that each vendor can also specify an advertising budget; and
(d) providing to the user, over the network, in response to the query, advertising from the set of vendors based, at least in part, on data retrieved from the database and based on advertising budgets supplied by the set of vendors.

## **THE '176 PATENT**

31.     Yillio is the owner by assignment from the inventors, Michael Wanyo and Vadim Droznin, of all right, title, and interest in and to United States Patent No. 8,650,176 (the "'176 Patent") titled "Apparatus and methods for providing route-based advertising and vendor-reported business information over a network," including the right to sue for all past, present, and future infringement. A true and correct copy of the '176 Patent is attached to this Complaint at Exhibit B.

32.     The '176 Patent issued from U.S. Patent Application No. 13/623,936 filed on September 21, 2012.

33.     The '176 Patent is a continuation of the '696 Patent.

34.     The '176 Patent claims the benefit of U.S. Patent Application Serial No. 60/812,464 filed on June 9, 2006.

35.     The Patent Office issued the '176 Patent on February 11, 2014, after a full and fair examination.

36.     The '176 Patent is valid and enforceable.

37.     The '176 Patent relates to a method of providing information about vendors to a user based on information extracted from a database on the basis of geographic proximity to a travel route identified by the user.

38.     The inventors of the '176 Patent identified a problem in the prior art of methods for obtaining fuel prices by searching outdated databases based on a specific location such as zip code or street address.

39.    The '176 Patent provides several advantages over the prior art such as providing the ability to display business information depending on specified distances from a contemplated route.



**FIG. 4**

40.    The '176 Patent describes and claims a specific method that involves using a travel route supplied by a user and then accessing a database of self-reported business information, based upon the geography of the travel route, which then provides to the user certain advertisements specified by the business.  The method further provides for a vendor interface through which the self-reporting businesses can provide their geographic location, advertising budget, and other targeted advertising information and bases the pricing of advertisements, at least in part, on the vendor's geographic location from the planned travel route.

41.    A person of ordinary skill in the art at the time of the invention would have recognized that methods claimed in the '176 Patent were, at the time of the invention, unconventional and describe a method of advertising by proximity to a travel route and based on a database of information and parameters selected by the user that, at the time of the invention, was not routine.

42.    A person of ordinary skill in the art at the time of the invention would have understood that, at the time of the invention, there was no conventional manner in which to provide advertising to a user that was based on proximity to a travel route.  Instead, a person of ordinary skill in the art would recognize that, at the time of the invention, business information had been searchable by area only and not by proximity to a route.  Furthermore, a skilled artisan would recognize that, at the time of the invention, vendors were not able to advertise based on distance from a user's route.

43.    The '176 Patent provides technical solutions to these problems not solved in the prior art by querying a database, extracting information, receiving a route request, and displaying results based on various factors such as distance from the route and advertising budget.

44.    Claim 1 of the '176 Patent reads:

1. A method providing advertising to a user over a network, the method comprising:
(a) receiving from the user a query identifying a contemplated route;
(b) accessing a computer database of self-reported business information from vendors, each vendor having an identified geographic location, wherein the self-reported business information has been previously supplied by the vendors through a vendor interface and stored in the database; and
(c) providing to the user, over the network, information from the database concerning the business information of a set of vendors extracted from the database on the basis of geographic proximity to the route identified by the user;
(d) providing to the user, over the network in response to the query, advertising from the set of vendors based, at least in part, on data retrieved from the database; and

(e) pricing the advertising based, at least in part, on distance of each vendor's geographic location from the contemplated route.

## THE '037 PATENT

45.    Yillio is the owner by assignment from the inventors, Michael Wanyo and Vadim Drznin, of all right, title, and interest in and to United States Patent No. 8,943,037 (the "'037 Patent") titled "Apparatus and methods for providing route-based advertising and vendor-reported business information over a network," including the right to sue for all past, present, and future infringement. A true and correct copy of the '037 Patent is attached to this Complaint at Exhibit C.

46.    The '037 Patent issued from U.S. Patent Application No. 14/175,568, filed on February 7, 2014.

47.    The '037 Patent is a continuation of application No. 13/623,936, filed on September 21, 2012 which became the '176 Patent, which in turn is a continuation of application No. 11/761,02, filed on June 11, 2007 which became the '696 Patent.

48.    The Patent Office issued the '037 Patent on January 27, 2015, after a full and fair examination.

49.    The '037 Patent is valid and enforceable.

50.    The '037 Patent relates to a method of providing information about vendors to a user based on information extracted from a database on the basis of geographic proximity to a travel route identified by the user.

51.    The inventors of the '037 Patent identified a problem in the prior art of methods for obtaining fuel prices by searching outdated databases based on a specific location such as zip code or street address.

52.    The '037 Patent provides several advantages over the prior art such as providing the ability to display business information depending on specified distances from a contemplated route.



**FIG. 4**

53.    The '037 Patent describes and claims a specific method that involves using a travel route supplied by a user and then accessing a database of self-reported business information, based upon the geography of the travel route, which then provides to the user certain advertisements specified by the business. The method further provides for a vendor interface through which the self-reporting businesses can provide their geographic location, advertising budget, and other targeted advertising information and bases the pricing of advertisements, at least in part, on the vendor's geographic location from the planned travel route.

54.    A person of ordinary skill in the art at the time of the invention would have recognized that methods claimed in the '037 Patent were, at the time of the invention,

unconventional and describe a method of advertising by proximity to a travel route and based on a database of information and parameters selected by the user that, at the time of the invention, was not routine.

55.    A person of ordinary skill in the art at the time of the invention would have understood that, at the time of the invention, there was no conventional manner in which to provide advertising to a user that was based on proximity to a travel route.  Instead, a person of ordinary skill in the art would recognize that, at the time of the invention, business information had been searchable by area only and not by proximity to a route.  Furthermore, a skilled artisan would recognize that, at the time of the invention, vendors were not able to advertise based on distance from a user's route.

56.    The '037 Patent provides technical solutions to these problems not solved in the prior art by querying a database, extracting information, receiving a route request, and displaying results based on various factors such as distance from the route and advertising budget.

57.    Claim 1 of the '037 Patent reads:

1. A method of providing advertising to a user or community of users over a network, the method comprising:
(a) receiving from the user a query identifying a contemplated route;
(b) accessing a computer database of self-reported business information from vendors, each vendor having an identified geographic location, wherein the self-reported business information has been previously supplied by the vendors through an interface and stored in the database, wherein the interface is configured so that each vendor can also specify an advertising budget;
(c) providing to the user or community, over the network, information from the database concerning the business information of a set of vendors extracted from the database on the basis of geographic proximity to the route identified by the user; and
(d) providing to the user or community, over the network in response to the query, advertising from the set of vendors based, at least in part, on data retrieved from the database and on advertising budgets supplied by the set of vendors.

## UBER

58.    Uber is a multinational transportation and technology company that provides ride-hailing services, food delivery, freight and courier services.

59.    Uber is the largest ridesharing company in the world with over 150 million monthly active users.

60.    Uber provides, in addition to its Uber ridesharing service, Uber Eats, which is an online food ordering and delivery platform, and a Multi-Store Ordering Feature, that operates in over 6,000 cities worldwide.  Uber integrates these products into one Uber App.

61.    In addition, Uber's subsidiary, Uber Freight, provides "Powerloop" functionality for booking multiple shipments as well as a Freight Card program for finding the best fuel prices on a route.

62.    Uber's implementation of these patented technologies in its Uber, Uber Eats, Multi-Store Ordering services, and Uber Freight (the Accused Products) has, on information and belief, significantly contributed to its efficiency and ability to sign up restaurants and end users to its services.

63.    Uber has been aware of Yillio and the Patents-in-Suit at least as early as the filing of this Complaint.

64.    The financial gains accrued by Uber through the use of Yillio's patented technology have been substantial, providing Uber with competitive advantages in the retail market.

65.    The benefits reaped by Uber through the exploitation of Yillio's intellectual property have resulted in corresponding harm to Yillio. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

66.    This case is filed to address and seek redress for the unauthorized use of Yillio's patented technology by Uber the Accused Products, which has led to significant commercial gains for Uber at the expense of Yillio's proprietary rights and investments.

## COUNT I

## (DIRECT PATENT INFRINGEMENT OF THE '696 PATENT)

67.    Yillio repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

68.    Uber has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '696 Patent, including the Accused Products.

69.    The Accused Products receive a user query identifying a contemplated route such as a user being able to see restaurants or merchants along a route when hailing a ride or ordering food through Uber Eats and through the Powerloop feature and Fuel Finder functionality of Uber Freight.

70.    The Accused Products access a computer database of self-reported business information from vendors, each vendor having an identified geographic location, wherein the self-reported business information has been previously supplied by the vendors through a vendor interface stored in the database.  For example, the Accused Products provide a sign up web page for its restaurant partners wherein the restaurants provide self-reported information such as geographic location, which is stored in a computer database.  For Defendant's Multi-Store Ordering Feature, Defendant's products receive a contemplated route from the user when the user puts in their order.  For example, when ordering on Uber Eats, the application requests a delivery address and then provides recommended restaurants based on the address provided.  Uber Freight, in its "Powerloop" functionality provides a system to to match forward and backhauls on a route,

booking multiple shipments.   Uber Freight additionally provides a service called Fuel Finder, which is part of Uber Freights Freight Card program.



https://www.ubereats.com/near-me?srsltid=AfmBOooGdCE4TtbHZqjT-a4ue7eqnKxE88XYVUPqFe0BXQr_Kr66gizO



https://www.uberfreight.com/carrier/carrier-card/

71.     The Accused Products access this database of self-reported vendor information.

72.     The Accused Products provide to the user, via a server accessible over a network, information from the database concerning the business information of a set of vendors extracted

from the database on the basis of geographic proximity to the route identified by the user and wherein the vendor interface is configured so that each vendor can also specify an advertising budget. For example, when a user hails a ride or order food on Uber Eats, the Accused Products access the database of restaurant or merchant information via a server concerning business information of the restaurant or merchant such as store hours, menus, prices, and specials. After the specified route has been provided for the food delivery order, the user may select a "Bundle another store" feature at which time the Accused Products will suggest additional food or products from vendors based on geographic proximity and who have provided advertising budgets. Uber Freight provides for bundling loads and Fuel Finder for finding the best fuel prices along a route.

# Drop and Hook: Where reliability and control meets flexibility and scalability

With Powerloop, carriers can book power-only loads to serve some of the world's largest shippers' drop and live freight. They can book one Powerloop load at a time or multiple loads bundled across Uber Freight's network to make every mile count. They can also grow their business by providing shippers with committed drop and live capacity on a weekly basis or dedicated capacity on an ongoing basis.

Shippers can secure flexible, reliable, and cost-effective coverage for their freight from a network of 121,000+ carriers. When shippers build a dedicated fleet with Uber Freight, they can also lower costs by leveraging shipments across Uber Freight's network.

https://www.uberfreight.com/drop-and-hook-loads/

**Here's how it works:**

1. After selecting items from a store's menu and adding them to your cart, tap "Bundle another store" at the bottom of the menu



https://www.uber.com/newsroom/multi-store-ordering/.  The Vendor can specify to Uber an advertising budget.

An Uber Eats spokesperson told us that the service will recommend nearby merchants whose orders can be conveniently bundled with the first place you choose, most likely so you can still get your food while it's still fresh and hot. It also won't limit the stores it recommends based on what kind of place they are, so you can add items from a second restaurant, a convenience store or even a merchant that sells liquor.

https://www.yahoo.com/news/uber-eats-now-lets-you-bundle-orders-from-two-places-130005836.html

73.     The Accused Products provide to the user, over the network, in response to the query, advertising from the set of vendors based, at least in part, on data retrieved from the database and based on advertising budgets supplied by the set of vendors.

74.     Uber has directly infringed the '696 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '696 Patent.

75.     The Accused Products satisfy each and every element of the asserted claim of the '696 Patent either literally or under the doctrine of equivalents.

76.     Uber's infringing activities are and have been without authority or license under the '696 Patent.

77.     As a direct and proximate result of Uber's infringement of the '696 Patent, Yillio has suffered and will continue to suffer damage.

78.     Yillio is informed and believes, and on that basis alleges, that Uber has been aware of the '696 Patent and its infringement thereof at least since the filing of this Complaint. Despite this knowledge, Uber has continued to use the Accused Products.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '696 PATENT)

79.     Yillio repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

80.     Uber is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '696 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '696 Patent.

81.    Uber's use of the Accused Products demonstrates specific intent to induce infringement of the '696 Patent. Uber encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '696 Patent.

82.    Uber's knowledge of the '696 Patent, combined with its ongoing use of the Accused Products, demonstrates Uber's knowledge and intent that the Accused Products be used in a manner that infringes the '696 Patent.

83.    Uber's actions and the manner in which the Accused Products, consistent with Uber's promotions and instructions, demonstrate Uber's specific intent to induce infringement of the '696 Patent.

84.    Yillio is informed and believes, and on that basis alleges, that Uber knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Uber, one or more claims of the '696 Patent.

85.    As a direct and proximate result of Uber's induced infringement of the '696 Patent, Yillio has suffered and will continue to suffer damage.

86.    Yillio is entitled to recover from Uber compensation in the form of monetary damages suffered as a result of Uber's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT INFRINGEMENT OF THE '176 PATENT)

87.    Yillio repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

88.    Uber has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '176 Patent, including the Accused Products.

89.    The Accused Products provide advertising to a user over a network as claimed in the '672 Patent.

90.    The Accused Products receive a user query identifying a contemplated route such as a user being able to see restaurants or merchants along a route through the Multi-Store Ordering Feature after having placed a food delivery order through Uber Eats and through the Powerloop feature and Fuel Finder functionality of Uber Freight.

91.    The Accused Products access a computer database of self-reported business information from vendors, each vendor having an identified geographic location, wherein the self-reported business information has been previously supplied by the vendors through a vendor interface stored in the database.  For example, the Accused Products provide a sign up web page for its restaurant partners wherein the restaurants provide self-reported information such as geographic location, which is stored in a computer database.  The Accused Products access this database of self-reported vendor information.  For Defendant's Multi-Store Ordering Feature, Defendant's products receive a contemplated route from the user when the user puts in their order. For example, when ordering on Uber Eats, the application requests a delivery address and then provides recommended restaurants based on the address provided.  Uber Freight, in its "Powerloop" functionality provides a system to to match forward and backhauls on a route, booking multiple shipments.  Uber Freight additionally provides a service called Fuel Finder, which is part of Uber Freights Freight Card program.

92.    The Accused Products provide to the user, via a server accessible over a network, information from the database concerning the business information of a set of vendors extracted from the database on the basis of geographic proximity to the route identified by the user.  For example, when a user hails a ride or order food on Uber Eats, the Accused Products access the

database of restaurant or merchant information via a server concerning business information of the restaurant or merchant such as store hours, menus, prices, and specials.  After the specified route has been provided for the food delivery order, the user may select a "Bundle another store" feature at which time the Accused Products will suggest additional food or products from vendors based on geographic proximity and who have provided advertising budgets.  Uber Freight provides for bundling loads and Fuel Finder for finding the best fuel prices along a route.

93.    The Accused Products provide to the user, over the network in response to the query, advertising from the set of vendors based, at least in part, on data retrieved from the database.  For example, Uber Eats provides specials and discounted delivery rates to a user based on information retrieved from the database and in response to the user's query while Uber Freight provides discounted fuel prices along a route.

94.    The Accused Products price the advertising based, at least in part, on distance of each vendor's geographic location from the contemplated route.

95.    The Accused Products satisfy each and every element of the asserted claim of the '176 Patent either literally or under the doctrine of equivalents.

96.    Uber's infringing activities are and have been without authority or license under the '176 Patent.

97.    As a direct and proximate result of Uber's infringement of the '176 Patent, Yillio has suffered and will continue to suffer damage.

98.    Yillio is informed and believes, and on that basis alleges, that Uber has been aware of the '176 Patent and its infringement since at least the filing of this Complaint. Despite this knowledge, Uber has continued to use the Accused Products.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '176 PATENT)

99.     Yillio repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

100.     Uber is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '176 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '176 Patent.

101.     Uber's use of the Accused Products demonstrates specific intent to induce infringement of the '176 Patent. Uber encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '176 Patent.

102.     Uber's actions and the manner in which the Accused Products are used, consistent with Uber's promotions and instructions, demonstrate Uber's specific intent to induce infringement of the '176 Patent.

103.     Yillio is informed and believes, and on that basis alleges, that Uber knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Uber, one or more claims of the '176 Patent.

104.     As a direct and proximate result of Uber's induced infringement of the '176 Patent, Yillio has suffered and will continue to suffer damage.

105.     Yillio is entitled to recover from Uber compensation in the form of monetary damages suffered as a result of Uber's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '037 PATENT)

106.    Yillio repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

107.    Uber has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '037 Patent including the Accused Products.

108.    The Accused Products embody a method of providing advertising to a user or community of users over a network as claimed in the '037 Patent.

109.    The Accused Products receive a user query identifying a contemplated route such as a user being able to see restaurants or merchants along a route through the Multi-Store Ordering Feature after having placed a food delivery order through Uber Eats and through the Powerloop feature and Fuel Finder functionality of Uber Freight.

110.    The Accused Products access a computer database of self-reported business information from vendors, each vendor having an identified geographic location, wherein the self-reported business information has been previously supplied by the vendors through a vendor interface stored in the database.  For example, the Accused Products provide a sign up web page for its restaurant partners wherein the restaurants provide self-reported information such as geographic location, which is stored in a computer database.  The Accused Products access this database of self-reported vendor information.  The Accused Products also provide an interface so that a restaurant, for example, can set an advertising budget.  For Defendant's Multi-Store Ordering Feature, Defendant's products receive a contemplated route from the user when the user puts in their order.  For example, when ordering on Uber Eats, the application requests a delivery address and then provides recommended restaurants based on the address provided.  Uber Freight, in its

"Powerloop" functionality provides a system to to match forward and backhauls on a route, booking multiple shipments. Uber Freight additionally provides a service called Fuel Finder, which is part of Uber Freights Freight Card program.

111.    The Accused Products provide to the user, via a server accessible over a network, information from the database concerning the business information of a set of vendors extracted from the database on the basis of geographic proximity to the route identified by the user. For example, when a user hails a ride or order food on Uber Eats, the Accused Products access the database of restaurant or merchant information via a server concerning business information of the restaurant or merchant such as store hours, menus, prices, and specials. After the specified route has been provided for the food delivery order, the user may select a "Bundle another store" feature at which time the Accused Products will suggest additional food or products from vendors based on geographic proximity and who have provided advertising budgets. Uber Freight provides for bundling loads and Fuel Finder for finding the best fuel prices along a route.

112.    The Accused Products provide to the user, or community of users, over the network in response to the query, advertising from the set of vendors based, at least in part, on data retrieved from the database and on advertising budgets supplied by the set of vendors. For example, Uber Eats provides specials and discounted delivery rates to a user based on information retrieved from the database and in response to the user's query and the advertising budget supplied by the restaurant. Uber Freight provides discounted fuel rates through its Fuel Finder functionality based on advertising from gas stations while Powerloop provides for advertising for different freight loads along a route.

113.    Uber has directly infringed the '037 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '037 Patent.

114.    The Accused Products satisfy each and every element of the asserted claim of the '037 Patent either literally or under the doctrine of equivalents.

115.    Uber's infringing activities are and have been without authority or license under the '037 Patent.

116.    As a direct and proximate result of Uber's infringement of the '037 Patent, Yillio has suffered and will continue to suffer damage.

117.    Yillio is informed and believes, and on that basis alleges, that Uber has been aware of the '037 Patent and its infringement thereof at least since the filing of this Complaint.

## COUNT VI

## (INDUCED PATENT INFRINGEMENT OF THE '037 PATENT)

118.    Yillio repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

119.    Uber is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '037 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '037 Patent.

120.    Uber's use of the Accused Products demonstrates specific intent to induce infringement of the '037 Patent. Uber encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '037 Patent.

121.    Uber's knowledge of the '037 Patent, combined with its ongoing use of the Accused Products, demonstrates Uber's knowledge and intent that the Accused Products be used in a manner that infringes the '037 Patent.

122.    Uber's actions and the manner in which the Accused Products are used in Uber's stores, consistent with Uber's promotions and instructions, demonstrate Uber's specific intent to induce infringement of the '037 Patent.

123.    Yillio is informed and believes, and on that basis alleges, that Uber knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Uber, one or more claims of the '037 Patent.

124.    As a direct and proximate result of Uber's induced infringement of the '037 Patent, Yillio has suffered and will continue to suffer damage.

125.    Yillio is entitled to recover from Uber compensation in the form of monetary damages suffered as a result of Uber's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## JURY DEMAND

Yillio hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Yillio prays for relief against Uber as follows:

(A)    An entry of judgment that Uber has infringed and is directly infringing one or more claims of each of the Patents-in-Suit;

(B)    An entry of judgment that Uber has infringed and is indirectly infringing one or more claims of each of the Patents-in-Suit;

(C)    An order pursuant to 35 U.S.C. § 283 permanently enjoining Uber, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

(D)    An entry of judgment that the Patents-in-Suit are valid and enforceable;

(E)    An order awarding damages sufficient to compensate Yillio for Uber's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

(F)    A finding that this case against Uber is "exceptional" and an award to Yillio of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(G)    An accounting of all infringing sales and revenues of Uber, together with post judgment interest and prejudgment interest from the first date of infringement of the '696 Patent, the '176 Patent, and the '037 Patent; and

(H)    Such further and other relief as the Court may deem proper and just.

Dated: May 16, 2025                              Respectfully submitted,

                                                 /s/ Christopher E. Hanba
                                                 Christopher E. Hanba
                                                 Texas Bar No. 24121391
                                                 chanba@dickinson-wright.com
                                                 Joshua G. Jones
                                                 Texas Bar No. 24065517
                                                 jjones@dickinson-wright.com
                                                 Bryan D. Atkinson
                                                 Texas Bar No. 24036157
                                                 batkinson@dickinson-wright.com

                                                 DICKINSON WRIGHT PLLC
                                                 607 W. 3rd Street, Suite 2500
                                                 Austin, Texas 78701
                                                 Telephone: (512) 582-6889
                                                 Facsimile: (844) 670-6009

Ariana D. Pellegrino
Michigan Bar No. P79104
apellegrino@dickinson-wright.com
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
Telephone: 313-223-3500
Facsimile: (844) 670-6009


*Attorneys for Plaintiff Yillio, Inc.*